UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BARRY PENNISON ET AL.                                          CIVIL ACTION

VERSUS                                                         NO: 16-3615

UNITED STATES                                                  SECTION: "A" (4)

## ORDER AND REASONS

Before the Court is a **Motion to Compel (Rec. Doc. 26)** filed by Plaintiffs, Barry and Lori Pennison (hereinafter the "Pennisons"). The United States, as Defendant in this matter, has filed an opposition to the Pennisons' motion (Rec. Doc. 30). The motion set for submission on August 24, 2016, is before the Court on the briefs without oral argument.[1]

### I. Background

The Pennisons are seeking judicial review of a Jeopardy Assessment conducted by the Internal Revenue Service ("IRS") against the Pennisons. On December 10, 2015, the IRS issued a Jeopardy Notice to inform the Pennisons that the IRS had conducted a Jeopardy Assessment. The Jeopardy Notice also stated that the Pennisons were liable for tax, penalties, and interest for each tax year between 2006 and 2010.

The Pennisons have had an administrative review of the assessment and then filed this complaint for judicial review, asserting that 1) the making the assessments was unreasonable, and 2) the amounts of the assessments were inappropriate. The making of a Jeopardy Assessment is reasonable if one of the following factors are met: 1) the taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself; 2) the taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the

---

[1] The Pennisons have requested oral argument on the Motion to Compel (Rec. Doc. 26), but the Court does not find it necessary in resolving this matter.

1

Government either by removing it from the United States, by dissipating it, or by transferring it to other persons; or 3) the tax payer's financial solvency is or appears to be imperiled.

A discovery hearing in this case was conducted on May 24, 2016 where the Court ordered that the United States produce 1) Gerralda Humphrey and Melissa Sander for deposition, 2) an administrative file relating to the Jeopardy Assessments with a privilege log, and 3) a redacted copy of the informant's letter to the plaintiff or unredacted copy of the letter to the Court for in-camera inspection. (Rec. Doc. 21). The United States has complied with this Court's discovery orders. First, the "United States has already agreed to produce Janice Stevens, Melissa Sander, and Gerralda Humphrey" for deposition. (Rec. Doc. 26-2, Pg. 8). Second, the United States produced the administrative file along with the privilege log. Third, the United States submitted to the Court an unredacted copy of the informant's letter for in-camera inspection, after which the Court ordered that the documents were to remain undisclosed. (Rec. Doc. 23).

The Pennisons thereafter filed the instant motion seeking to compel: 1) the deposition of James Boland, the IRS's Associate Area Counsel Attorney; 2) records and communications involving James Boland; 3) Draft documents, a portion of an e-mail between Janice Stevens and James Boland, and notes of Agent Gerralda Humphrey; 4) all documents relating to the jeopardy assessment between September 24, 2015 and November 20, 2015; and 5) all attachments to e-mails that were produced as part of the administrative file.

## II.   Standard of Review

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b). Rule 26(b) specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P.

26(b)(1). However, discovery may be limited under Rule 26(b)(2)(C), if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.[2] Fed.R.Civ.P. 26(b)(2)(C).

Discovery is further limited by Rule 26(b)(3) because it precludes discovery of documents and tangible things "that are prepared in anticipation of litigation or for trial by or for another party or its representative" which includes the party's attorney. Fed.R.Civ.P. 26(b)(3). However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship." Fed.R.Civ.P. 26(b)(3).

### III.  Analysis

The Pennisons seek 1) records and communications involving James Boland; 2) the deposition of James Boland, the IRS's Associate Area Counsel Attorney; 3) Draft documents, a portion of an e-mail between Janice Stevens and James Boland, and notes of Agent Gerralda Humphrey; 4) all documents relating to the jeopardy assessment between September 24, 2015 and November 20, 2015; and 5) all attachments to e-mails that were produced as part of the administrative file.

#### a.  Records and Communications Involving James Boland

The Pennisons seek all records and communications involving James Boland, the IRS's Associate Area Counsel Attorney, including a redacted portion of an e-mail exchange between

---

[2] In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C)(iii).

Boland and Janice Stevens, an IRS Revenue Agent Reviewer. (Rec. Doc. 26-2; Pg. 5). The Pennisons argue that the United States has waived its attorney-client privilege with regard to James Boland because it produced communications among Boland and other IRS agents, and that the "same subject matter standard," applies. (Rec. Doc. 26-2, Pg. 7) (citing *Hunter v. Copeland*, 2004 WL 2472487, *2 (E.D.La. 2004)). Further, the Pennisons point to communications in the administrative file that indicate that "Boland played a significant role in the decision to impose a Jeopardy Assessment. (Rec. Doc. 26-2, Pg. 7)  The United States contends that the attorney-client privilege protects these records and communications from disclosure, arguing that the Pennisons have failed to point to any specific privileged communication that the United States disclosed. (Rec. Doc. 30, Pg. 4). Additionally, the United States argues that the materials sought by the Pennisons are not within the same subject matter as the Jeopardy Assessment.

    The Court is not persuaded that the United States waived its attorney-client privilege with regard to James Boland. This Court ordered that the United States produce an administrative file and privilege log, and the United States complied. Although the Pennisons have pointed to specific communications that indicate that Boland was involved in the Jeopardy Assessment, they fail to point to any specific privileged communication that waived the United States' attorney-client privilege with regard to Boland. Rather, the Pennisons only generally state that the United States' "production of a significant portions of communications" waives this privilege.  Thus, the Court finds that the United States did not waive its attorney-client privilege with regard to James Boland.

    Even if the Court agreed that the United States waived its attorney-client privilege with regard to James Boland, and that other communications on the same subject matter would be subject to discovery under the same subject matter standard, the Court would be inclined "to construe the concept narrowly." *Hunter v. Copeland*, 2004 WL 2472487, *2 (E.D.La. 2004). The

4

Court must also maintain fairness to the parties. *Id.* Factors for courts to consider when determining whether disclosed and undisclosed communications are under the same subject matter include:

> 1) the general nature of the lawyer's assignment, 2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable, 3) the extent the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity, 4) the circumstances in and purposes for which disclosure originally was made, 5) the circumstances in and purposes for which further disclosure is sought, 6) the risks to the interests protected by the privilege if further disclosure were to occur, and 7) the prejudice which might result if disclosure were not to occur. *Hunter v. Copeland*, 2004 WL 2472487, *2 (E.D.La. 2004).

The Court finds the fourth and fifth factors relevant: 4) the purpose for which the disclosure was originally made, and 5) the circumstances in and purposes for which further disclosure is sought. As for the purpose the original disclosure was made, the United States produced significant portions of communications with Boland in compliance with this Court's order to produce an administrative file. As for the circumstances in which further disclosure is sought, the United States has already agreed to produce Janice Stevens, Melissa Sander, and Gerralda Humphrey for deposition and has already produced a significant number of documents. (Rec. Doc. 26-2, Pg. 8). Because the United States produced documents to the Pennisons in compliance with an order of this Court, and because the Pennisons already have access to multiple government agents and to a significant number of documents, the Court finds that the documents sought by the Pennisons do not fall within the subject matter of the United States' alleged waiver of its attorney client privilege with regard to Boland. Having found that the United States did not waive its attorney-client privilege with regard to James Boland and that, even if it did, the documents sought are undiscoverable, the Court denies the Pennisons' motion to compel the production of all records and communications involving James Boland.

### b. Deposition of James Boland

The Pennisons seek the deposition of James Boland, the IRS's Associate Area Counsel Attorney, arguing that the United States has waived any attorney-client privilege. (Rec. Doc. 26-2, Pg. 8). The United States argues that Boland's deposition would add little to no value to the depositions of Gerrelda Humphrey, who prepared the initial recommendation for a jeopardy assessment, and Janice Stevens, who led the coordination of making the jeopardy assessment. (Red. Doc. 30, Pg. 12). The United States further argues that, contrary to Pennisons' argument, it has not waived the attorney-client privilege as to Boland's testimony. (Red. Doc. 30, Pg. 12).

The United States has complied with the Pennisons to the extent possible. The Pennisons even admit that the United States "suggested providing a list of topics or interrogatories to limit Boland's testimony," but the Pennisons believe that they should be allowed to depose Boland on all Jeopardy Assessment issues. (Rec. Doc. 26-2, Pg. 7). Having already found that the United States did not waive its attorney-client privilege with regard to James Boland, the Court denies the Pennisons' motion to compel the production of James Boland for deposition.

### c. Draft Revenue Agents Report, Draft Appeals Case Memorandums, Work Papers of Revenue Agent Gerralda Humphrey in Contemplation of Jeopardy Assessment, and a Portion of an E-mail between Janice Stevens and James Boland

The Pennisons seek all documents withheld by the United States under the deliberative process privilege, including a draft revenue agent report, draft appeals case memorandums, work papers/notes of Agent Gerralda Humphrey, and a portion of an e-mail between Boland and Janice Stevens. (Rec. Doc. 26-2, Pg. 9). The United States maintains that the deliberative process privilege protects these documents, and replies that the United States has already produced final versions of most of these documents. (Rec. Doc. 30, Pg. 6).

The deliberative process privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klein v. Jefferson Parish School Bd.*, 2003 WL 1873909, *4 (E.D. La. 2003) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975)). The test for determining whether the material is privileged is whether the material would generally be disclosed in civil litigation. *Gulf Production Co., Inc. v. Hoover Oilfield Supply*, 2011 WL 1321607, *4 (E.D. La. 2011). The privilege protects the internal communications of governmental agencies that are deliberative in nature, but not those that are "purely factual." *Id.* at 5 (quoting *EPA v. Mink,* 410 U.S. 73, 88–89 (1973)). The deliberative process privilege is narrowly construed, and in order for it to apply it must be: 1) pre-decisional before the adoption of an agency policy or decision, and 2) deliberative in nature. *Id.* The document must be "generated before the adoption of an agency policy or decision and prepared in order to assist agency decision maker in arriving at his or her decision" in order to qualify as pre-decisional. *Klein v. Jefferson Parish School Bd.*, 2003 WL 1873909, *4 (E.D. La. 2003). To qualify as deliberative, the document must contain "opinions, recommendations or advice about agency policies." *Id.*

The documents sought by the Pennisons include notes by agents and drafts of documents, the final versions of which are already in the Pennisons' possession. These documents are pre-decisional because they reflect the IRS's thoughts and deliberations before making final decisions, as they constitute initial notes and drafts. These documents, sought by the Pennisons, are also deliberative because they include thoughts and recommendations about the IRS's policies. Thus, the Court finds that the documents sought by the Pennisons are protected by the deliberative process privilege.

The Pennisons argue that even if the documents are protected, they have an overriding need for the documents sought. When documents are protected by the deliberative process privilege, the party seeking such materials may still obtain them if "his need for accurate fact finding override[s] the government's interest in nondisclosure." *Klein v. Jefferson Parish School Bd.*, 2003 WL 1873909, *4 (E.D. La. 2003). Factors for whether production would be proper include:

> 1) the importance of the documents to the defense and their relevance; 2) the availability of information on the same issue from a different source; 3) the importance of the litigation and the issues involved; 4) the government's role, if any, in the litigation; and 5) the potential chilling of governmental employees' expression of candid opinion. *Id.*

The Pennisons seek draft IRA agents' reports, draft appeals case memorandums, notes of IRS agent Gerralda Humphrey, and a portion of an e-mail between Janice Stevens and James Boland. The United States has already produced the final versions of the draft documents, so the information on the same issue is already available to the Pennisons. Also, considering that the Pennisons are already in possession of the final versions of these documents, the drafts are not likely important to the Pennisons' defense. Lastly, considering the potential chilling effect of IRS employees' expression of candid opinions, particularly in their work notes, the Court is persuaded that the IRS's interest in nondisclosure overrides the Pennisons need for accurate fact finding. Therefore, the Court denies the Pennisons' motion to compel the production of draft IRA agents' reports, draft appeals case memorandums, notes of IRS agent Gerralda Humphrey, and a portion of an e-mail between Janice Stevens and James Boland.

### d. All Documents Between September 24, 2015 and November 20, 2015

The Pennisons seek all documents relating to the IRS's activity between September 24, 2015, the date the IRS received an informant's tip, and November 20th, 2015. (Rec. Doc. 26-2, Pg. 12). In their request, the Pennisons cite a letter in the activity log from November 20th, 2015

that the Pennisons believe references numerous actions that the IRS took "with respect to the Pennisons' tax years 2006 thru 2010." (Rec. Doc. 26-2. Pg. 12). The United States contends that the documents from the "numerous actions" during those two months are public record, namely the interpleader that resulted from a jeopardy levy and Notices of Federal Tax Lien. The United States further contends that the only other action during that time involved the jeopardy levy, which the United States argues is irrelevant to the jeopardy assessment. (Rec. Doc. 30, Pg. 10-11).

In their request for documents after September 24, 2015, the Pennisons reference communications dated September 28th, 2015, and October 29th, 2015. (Rec. Doc. 26-2, Pg. 12). The United States argues that "the Court concluded that the United States does not have to produce any of the informant's correspondence or attachments to the e-mail dated September 28th, 2015." (Rec. Doc. 30, Pg. 11). The United States argued further that any information concerning the receipt and handling of the informant's communications are irrelevant to the reasonableness of the jeopardy assessment. (Rec. Doc. 30, Pg. 11).

The Court has already held that the informant's correspondence with the IRS "do not need to be disclosed." (Rec. Doc. 23). The Court is again unpersuaded that the documents between September 24, 2015 and November 20, 2015 need to be disclosed. Therefore, the Court denies the Pennisons' motion to compel all documents relating to the IRS's activity between September 24, 2015 and November 20, 2015.

### e. All Attachments to E-mails That Were Produced as Part of Administrative File and a Sample Final Jeopardy Assessment Memo

Lastly, the Pennisons seek all attachments to e-mails that were produced as part of the administrative file. (Rec. Doc. 26-2, Pg. 13). The United States contends that these attachments are drafts of document, the final versions of which have already been produced, and again argues

9

that these drafts are protected by the deliberative process privilege. Having found that the documents withheld by the United States under the deliberative process privilege are undiscoverable, the Court denies the Pennisons' motion to compel all attachments to e-mails that were produced as part of the administrative file.

As part of this request, the Pennisons request production of a sample final jeopardy assessment memorandum. (Rec. Doc. 26-2, Pg. 13). The United States asserts that such a sample is prohibited from disclosure under 26 U.S.C. § 6103, which declares that "any return or return information" is confidential. 26 U.S.C. § 6103 (2016). A sample final jeopardy assessment would include confidential information protected by 26 U.S.C. § 6103, and the IRS's production of the sample would violate 26 U.S.C. § 6103. Therefore, the Court denies the Pennisons' motion to compel a sample final jeopardy assessment memorandum.

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion to Compel (Rec. Doc. 26)** is **DENIED**;

New Orleans, Louisiana, this 27th day of September, 2016.

_____
THE HONORABLE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE